UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

EARL DANIELS, JR., BENJAMIN SEALS,
WILLIE STITT, JR., JAMES McADORY and
KENNETH HAYES,

                    Plaintiffs,

        v.                                                              **DECISION AND ORDER**

NIAGARA MOHAWK POWER CORPORATION and                   04-CV-0734S
THE INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS UNION, AFL-CIO,
LOCAL 97,

                    Defendants.

## I. INTRODUCTION

        Plaintiffs commenced this action on September 10, 2004, and thereafter filed an

Amended Compliant and a Second Amended Complaint.  Plaintiffs are Black males who

are, or were, employees of Defendant Niagara Mohawk Power Corporation ("Niagara

Mohawk") and members of Defendant International Brotherhood of Electrical Workers,

AFL-CIO, Local 97 ("IBEW").

        In their Second Amended Complaint, Plaintiffs allege that Niagara Mohawk

discriminated against them in their employment based on their race and that IBEW

declined to pursue their complaints because of their race, all in violation of Title VII of the

Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*  Presently

before this Court are IBEW's Motion for Summary Judgment (Docket No. 35) and Niagara

Mohawk's Motion for Summary Judgment (Docket No. 35), seeking dismissal of the

Second Amended Complaint in its entirety.[1]  For the following reasons, both IBEW's and Niagara Mohawk's motions are granted.

## II.  PROCEDURAL HISTORY

When Plaintiffs filed their Complaint with the Court Clerk for the United States District Court for the Western District of New York, they attached a Dismissal and Notice of Suit Rights issued to Plaintiff Earl Daniels by the Equal Employment Opportunity Commission ("EEOC").  On October 12, 2004, Judge Larimer issued a Decision and Order finding, among other deficiencies, that no Plaintiff other than Daniels had set forth any allegation or evidence indicating that he had filed a charge of discrimination with the EEOC against Defendants and received from that agency a Notice of Suit Rights prior to commencing this action.  The Plaintiffs, except for Daniels, were directed to file their EEOC Notices by October 25, 2004.  (Docket No. 3.)

Plaintiffs Seals, Stitt, McAdory and Hayes each then filed a charge with the EEOC and immediately requested the issuance of a Notice of Suit Rights.  They each filed their Notices by the Court's deadline.  (Docket Nos. 5-8.)  On March 11, 2005, Plaintiffs filed their Second Amended Complaint with copies of each of their Notices attached.  (Docket No. 14.)

Defendants filed their respective motions for summary judgment on June 14, 2006.

---

[1]  In support of its motion, IBEW submitted a Local Rule 56.1 Statement of Undisputed Material Facts, a Local Rule 56.1 Appendix, the Affidavit of Kevin B. Long with exhibits A through M, a Memorandum of Law and a Reply Memorandum of Law.  Niagara Mohawk has submitted a Memorandum of Law with exhibits A through G, a Local Rule 56.1 Statement of Undisputed Material Facts, the Affidavit of William G. Lynn, the Affirmation of James J. Rooney, Esq. with exhibits A through P, a Reply Memorandum of Law, and the Reply Declaration of William G. Lynn.

Plaintiffs combined opposition to Defendants' motions includes a Local Rule 56.1 Statement of Disputed Facts, an opposing Memorandum of Law, the Affidavit of Benjamin Seals, the Affidavit of Earl Daniels, and the Affidavit of Thomas Allen.

Niagara Mohawk argues that each Plaintiff failed to timely file an EEOC charge, no Plaintiff can demonstrate differential treatment based on race, Daniels cannot establish a *prima facie* case of discrimination, no Plaintiff has identified an actionable adverse employment action, and no Plaintiff satisfied the statutory prerequisites to suit because each of their EEOC charges was pending before the EEOC for less than 180 days.  IBEW argues that each Plaintiff failed to timely file an EEOC charge, except for any claim by Daniels relating to conduct occurring between July 11, 2003 and September 18, 2003, and no Plaintiff has established a *prima facie* claim of discrimination.   The motions were taken under advisement without oral argument.

### III.  DISCUSSION

**A.     Timeliness**

Defendants first argue that all or most of the Plaintiffs' allegations are time-barred. To maintain a discrimination action under 42 U.S.C. §2000e-5, a plaintiff must file a timely charge with the EEOC or the equivalent state agency, receive from that agency a right to sue letter, and commence an action within 90 days after receipt of that letter.  Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 712 (2d Cir. 1996); Cornwell v. Robinson, 23 F.3d 694, 706 (2d Cir. 1994).   In New York state, where state and local agencies have the authority to investigate claims of discrimination, an administrative charge must be filed within 300 days of the alleged unlawful conduct.  Forsyth v. Federation Employment and Guidance Serv., 409 F.3d 565, 572 (2d Cir. 2005) (citing 42 U.S.C. § 2000e-5(e)(1)).

The "filing [of] a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is

subject to waiver, estoppel, and equitable tolling." <u>Zipes v. Trans World Airlines, Inc.</u>, 455 U.S. 385, 393, 102 S. Ct. 1127, 71 L. Ed. 2d 234 (1982).  Nevertheless, a plaintiff bears a heavy burden in establishing that equitable principles should permit the procedural requirements in question to be bypassed.  <u>Alston v. City of New York</u>, 03-CV-0086, 2006 U.S. Dist. LEXIS 67882, at *3-4 (E.D.N.Y. Sept. 21, 2006) (where plaintiff failed to file timely administrative charge prior to commencing suit and did not address that failure in opposition to motion, there was no basis to bypass the statutory prerequisite).  As the Supreme Court recently reconfirmed with regard to the timely filing requirements, "'strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.'" <u>National R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 108 (2002) (quoting <u>Mohasco Corp. v. Silver</u>, 447 U.S. 807, 826 (1980)).

In calculating the procedural limitation periods, discrete acts of discrimination or retaliation are deemed to have occurred on the date that they happened.  Therefore, a party must file an EEOC charge within 300 days after the complained of act or lose the ability to recover for it.  <u>Morgan</u>, 536 U.S. at 108.  Discrete acts generally are easy to identify and include such things as termination, failure to promote, denial of transfer or refusal to hire.  <i>Id</i>. at 114.

### 1.    Earl Daniels, Jr.

Plaintiff Daniels filed an EEOC charge against Niagara Mohawk and IBEW on May 7, 2004.  Daniels' charge is timely to the extent he points to discrimination occurring on and after July 12, 2003.  (Rooney Affirm. Ex. N.)  In his charge, he alleges that, because of his race, Niagara Mohawk passed him over for a promotions or upgrades on numerous

occasions, "most recently on or about September 18, 2003," and IBEW denied him proper representation in connection with those incidents.  His charge includes a timely allegation as to each Defendant.

### 2.    Benjamin Seals

Defendant Seals filed two EEOC charges on October 12, 2003, one against Niagara Mohawk (Rooney Aff. Ex. H), and one against IBEW (Long Aff. Ex. B).  The charges are untimely as to incidents of discrimination occurring prior to December 17, 2003.

Seals alleges that Niagara Mohawk discriminated against him based on his race when it involuntarily transferred him to a different department in September 2003.  His charge against IBEW recites the same incident, and alleges that he "repeatedly complained to the union, to no avail."[2]

There are no timely allegations against Niagara Mohawk.  However, Seals' allegation that he repeatedly sought assistance from IBEW in connection with the September 2003 transfer allows for the possibility that at least one such request occurred on or after December 17, 2003.  Accordingly, it is appropriate to consider the merits of that allegation.

### 3.    Willie Stitt, Jr.

Plaintiff Stitt filed two EEOC charges on October 8, 2004, one against Niagara Mohawk (Rooney Aff. Ex. K), and the other against IBEW (Long Aff. Ex. C).  The charges are untimely as to incidents of discrimination occurring prior to December 13, 2003.

Like Seals, Stitt alleges that, because of his race, he was involuntarily transferred

---

[2]  Both charges included an additional allegation that has no bearing on the timeliness analysis because Seals has not made any claim with respect to that matter in this lawsuit.

to a different department in September 2003 and that when he complained to IBEW, it declined to file a grievance on his behalf, "instead filing a grievance on behalf of several members." The grievance to which Stitt refers was filed on September 17, 2003, which means the alleged denial of his request for representation preceded that date. (Long Aff. ¶ 25, Ex. G.) Thus, there are no timely allegations made in either charge.

### 4.      James A. McAdory

Plaintiff McAdory filed two EEOC charges on October 21, 2004, one against Niagara Mohawk (Rooney Aff. Ex. E), and the other against IBEW (Long Aff. Ex. A). The charges are untimely as to incidents of discrimination occurring prior to December 26, 2003.

McAdory alleges that Niagara Mohawk wrongfully changed his shift in 2002, suspended him in April 2002, and disciplined him on August 1, 2003 and December 8,[3] 2003. As for IBEW, McAdory alleges that the union failed to file a grievance on his behalf in connection with the April 2002 suspension. There are no timely allegations made in either charge.

### 5.      Kenneth Hayes

Plaintiff Hayes filed an EEOC charge against Niagara Mohawk dated October 21, 2004. (Rooney Affirm. Ex. B.) Thus, incidents of discrimination occurring before December 26, 2003 are time-barred. In his charge, Hayes alleged that from 1985 through 1999, Niagara Mohawk subjected him and other Black employees to disparate treatment based on race with respect to performance evaluations, job safety, drug testing,

---

[3] McAdory's charge indicates that he was disciplined on December 3, 2003. However, Niagara Mohawk submitted the Affidavit of William G. Long, its Labor Relations Manager, who attests that the allegation relates to a written reminder McAdory received on December 8, 2003. This latter date is more favorable to McAdory and is the date this Court will consider in evaluating timeliness.

compensation and promotions.  Hayes he has not worked for Niagara Mohawk since 1999. (*Id*. Ex. D at 189:19-21; Long Aff. ¶ 42.)  All allegations against Niagara Mohawk are time-barred.

Hayes also filed an EEOC charge against IBEW on October 21, 2004.  (Long Aff. Ex. D.)  In his charge, Hayes alleged that he has been continuously represented by IBEW in his employment at Niagara Mohawk (1985 - 1999) and NRG Dunkirk operations (1999-date of filing), and that IBEW continuously denied him proper union representation because of his race.  He specifically complained of IBEW's failure to pursue a grievance in April 1995 and failure to pursue a claim for benefits in April 2004.  The Hayes' charge includes a timely allegation against IBEW.

In summary, Daniels' claims against both Defendants are timely as to conduct occurring on or after July 12, 2003, Seals' claims against IBEW for conduct occurring on or after December 17, 2003 are timely, and Hayes' claims against IBEW are timely as to incidents occurring on or after December 26, 2003.  Stitt's and McAdory's claims as against both Defendants, and Seals' and Hayes' claims against Niagara Mohawk, are time-barred and must be dismissed.

In opposition to Defendants' motions, Plaintiffs argue that they have alleged a continuing violation.  This Court disagrees.  As noted above, the kinds of incidents alleged in the Second Amended Complaint—discriminatory transfer, suspension, discipline, promotion, compensation and the like—are discrete acts of discrimination as opposed to a continuing violation and are actionable only to the extent that each occurred within the 300-day time period.  Morgan, 536 U.S. at 114.  It is well-settled that "multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or

mechanism do not amount to a continuing violation." <u>Lambert v. Genesee Hosp.</u>, 10 F.3d 46, 53 (2d Cir. 1993) (citations omitted).  Simply invoking the term "policy" or "practice" in a charge or complaint does not convert related discrete acts into a single unlawful practice for the purposes of timely filing.  <u>Morgan</u>, 536 U.S. at 111.  *See also*, <u>Lightfoot v. Union Carbide Corp.</u>, 110 F.3d 898, 907 (2d Cir. 1997) (repeated demotions and failure to adequately compensate not sufficient for continuing violation theory); <u>Gross v. National Broadcasting, Inc.</u>, 232 F. Supp. 2d 58, 68 (S.D.N.Y. 2002) ("The holding in <u>Morgan</u> is in accord with Second Circuit law which states that alleged failures to compensate adequately, transfers, job assignments and promotions cannot form the basis for a continuing violation claim.").  Thus, even where the charges include a mix of timely and untimely allegations, the continuing violation doctrine simply does not apply to these claims.

**B.    Exhaustion of Administrative Remedies**

Both Defendants urge that all claims should be dismissed due to Plaintiffs' failure to exhaust their administrative remedies.  Specifically, the Plaintiffs, except for Daniels, did not file their EEOC charges until after commencing this action, and the Plaintiffs, including Daniels, did not allow the EEOC 180 days to investigate and attempt to conciliate the charges prior to filing suit.  *See* 42 U.S.C. § 200e-5(f)(1).

It has long been recognized that a plaintiff's failure to first present claims to the EEOC and permit it time to conduct a meaningful investigation defeats the purpose of Title VII's statutory notice provision, which is "to encourage settlement of discrimination disputes through conciliation and voluntary compliance."  <u>Miller v. Int'l Tel. & Tel. Corp.</u>, 755 F.2d

20, 26 (2d Cir. 1985); Burnett v. ESL Fed. Credit Union, 198 F. Supp. 2d 307, 314-15 (W.D.N.Y. 2002).

Nevertheless, Judge Larimer chose not dismiss this action, *sua sponte*, but permitted the Plaintiffs to maintain their lawsuit while they acquired their Notices of Suit Rights and filed them with the Court.  Plaintiffs could not allow their charges to remain pending with the EEOC for 180 days and meet the deadline set forth in the Court's Order. In light of the October 12, 2004 Decision and Order's effective waiver of the requirement for pre-suit exhaustion, Defendants' request that all otherwise timely claims[4] be dismissed for failure to exhaust administrative remedies is denied.

## C.    Summary Judgment Standard

Federal Rule of Civil Procedure 56 provides that summary judgment is warranted where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  A fact is "material" if it "might affect the outcome of the suit under governing law." *Id.* "An alleged factual dispute regarding immaterial or minor facts between the parties will not defeat an otherwise properly supported motion for summary judgment." Powell v. National Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir.

---

[4]  The Court did not waive the requirement that Plaintiffs file their EEOC charges before proceeding with their action, and the EEOC filings remain the appropriate measure for timeliness.  It is clear from the record here that Defendants received notice of Plaintiffs' claims via the EEOC's Notices of Suit Rights well before either Defendant was served with a Summons and Complaint in this action.

2004) (citation omitted).  In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be viewed in the light most favorable to the non-moving party.  Weinstock v. Columbia Univ., 224 F.3d 33, 40 (2d Cir. 2000).

The Second Circuit has noted that trial courts should be particularly cautious in deciding whether to grant summary judgment in employment discrimination cases, because the employer's intent is often at issue.  Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997).  However, the Supreme Court more recently has "reiterated that trial courts should not 'treat discrimination differently from other ultimate questions of fact.'" Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000) (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 524, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993)).  In other words, summary judgment can be appropriate even in the fact-intensive context of discrimination cases.  This is consistent with a principle purpose of the summary judgment rule; "to isolate and dispose of factually unsupported claims."  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

## C.    The Facially Timely Discrimination Claims

Under Title VII, it is unlawful for an employer to discriminate against an individual in compensation or in terms, conditions or privileges of employment because of that individual's race.  42 U.S.C. § 2000e-2(a).  In evaluating claims of race discrimination, this Court applies the burden shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-804, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) and Texas Dep't of Comt'y Affairs

10

v. Burdine, 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981).[5] To make out a *prima facie* case of discrimination, a plaintiff must show that (1) he is a member of a protected class, (2) he is qualified for his position, (3) he suffered an adverse employment action, and (4) the circumstances of the adverse action give rise to an inference of discrimination. Weinstock, 224 F.3d at 42 (citing McDonnell Douglas, 411 U.S. at 802). The burden a plaintiff carries at the *prima facie* stage of summary judgment is minimal. Fisher v. Vassar College, 114 F.3d 1332, 1340 n.7 (2d Cir. 1997) (*en banc*), *cert. denied*, 522 U.S. 1075, 118 S. Ct. 851, 139 L. Ed. 2d 752 (1998).   In fact, no evidence of discrimination is required. James v. New York Racing Ass'n, 233 F.3d 149, 153 (2d Cir. 2000).

If a plaintiff meets his initial burden to establish a *prima facie* case, a rebuttable presumption of discrimination arises and the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the challenged employment action. Burdine, 450 U.S. at 254.   If the employer succeeds in making its showing, "the presumption of discrimination arising with the establishment of the *prima facie* case drops from the picture." Weinstock, 224 F.3d at 42 (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510-11, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993)).

The burden then shifts back to the plaintiff to produce "evidence that the [employer's] proffered, non-discriminatory reason is a mere pretext for actual discrimination." Weinstock, 224 F.3d at 42.  "In short, the question becomes whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination." *Id.*

---

[5]  When considering claims brought under the HRL, this Court employs the same analysis it uses for Title VII claims.  Cruz v. Coach Stores, Inc., 202 F.3d 560, 565 n.1 (2d Cir. 2000).

However, "evidence contradicting the employer's given reason—without more—does not necessarily give logical support to an inference of discrimination." James, 233 F.3d at 154. Put simply, "[i]t is not enough . . . to disbelieve the employer; the factfinder must [also] believe the plaintiff's explanation of intentional discrimination." *Id*. at 156 (quoting St. Mary's, 509 U.S. at 519).

Title VII claims against a union, 42 U.S.C. § 2000e-2(c), require a different *prima facie* showing, but are analyzed using the same burden-shifting analysis. To establish a *prima facie* Title VII claim for a union's breach of its duty of fair representation, a plaintiff must show that (1) the employer violated the collective bargaining agreement with respect to the plaintiff, (2) the union permitted the violation to go unrepaired, thereby breaching the union's duty of fair representation, and (3) there was some indication that the union's actions were motivated by discriminatory animus. Carrion v. Local 32B-32J SEIU, 03 Civ. 1896, 2005 U.S. Dist. LEXIS 4417, at *22-23 (S.D.N.Y. Mar. 21, 2005) (quoting York v. AT&T, 95 F.3d 948, 955-56 (10th Cir. 1996)); *see also*, Bugg v. Int'l Union of Allied Indus. Workers, Local 507, 674 F.2d 595, 598 n.5 (7th Cir. 1982); Ross v. Communication Workers of Am., Local 1110, 91 Cit. 6367, 1995 U.S. Dist. LEXIS 7959, at *19-20 (S.D.N.Y. June 9, 1995), *affd*, 100 F.3d 944 (2d Cir. 1996), *cert denied*, 519 U.S. 835, 117 S. Ct. 108, 136 L. Ed. 2d 61 (1996).

### 1.    Earl Daniels' Claims against Niagara Mohawk and IBEW

From in or about 1985 until 2005, Plaintiff Daniels was employed at Niagara Mohawk in the position of Mechanic B. He became a Mechanic C in 2005. (Lynn Aff. ¶ 23.) He claims he should have received the position of Mechanic C much sooner.

In his deposition, Mr. Daniels stated that when he would ask about "C" openings in the Construction and Maintenance Department, he would be told there were no jobs to bid on, but then "weeks later there is a new guy in the department." (Rooney Affirm. Ex. P at 14:3-12.) Mr. Daniels identified three less qualified Caucasians who were promoted to Mechanic C at times when he was told there were no openings—Dave Sorgi, Carolyn Carey and Pete Martino. (*Id*. at 17:8-16.)

According to Mr. Daniels, both Sorgi and Carey were promoted on September 9, 2002. (*Id*. at 17:17-23.) Defendants state that Sorgi had been a Mechanic C since 1985 and was placed in the Construction and Maintenance Department in December 2000, pursuant to a security provision in the collective bargaining agreement, when the plant at which he previously worked was sold. (Lynn Aff. ¶¶ 24-25; Long Aff. ¶¶ 11-12.) As for Carey, Defendants attest that she was awarded a seasonal Mechanic C position in the Construction and Maintenance Department in 2000 and that, as a result of collective bargaining in 2001, that position was converted from a seasonal to full-time title. (Lynn Aff. ¶¶ 26-27; Long Aff. ¶¶ 13-14.)

Mr. Daniels has not provided any information relative to the timing of Martino's promotion. Defendants attest that prior to being placed in a Mechanic C position in the Construction and Maintenance Department, Martino worked as a Cable Splicer C, which is a higher-rated position under the collective bargaining agreement. (Lynn Aff. ¶ 28; Long Aff. ¶ 15.) However, after Martino engaged in a safety-related violation, Niagara Mohawk took disciplinary action against him. (*Id*.) As a result of a settlement with IBEW over the discipline, Martino was demoted to the position of Mechanic C in February 2000. (*Id*. at

13

29; Long Aff. ¶ 15.)  Niagara Mohawk argues that it had legitimate business reasons for each of its decisions, and IBEW argues that because Niagara Mohawk's placements did not violate the collective bargaining agreement, it had a legitimate reason for declining to pursue grievances on Mr. Daniels' behalf.

As noted above, Mr. Daniels' claims are timely only to the extent they relate to acts of discrimination occurring on and after July 12, 2003.  Although he alleged in his EEOC charge and the Second Amended Complaint that he was discriminatorily denied a promotion on or about September 18, 2003, his sworn testimony differs and he has not identified any discrimination occurring after September 9, 2002.  Accepting the date Mr. Daniels gave in his deposition, which is later than all dates identified by Defendants, his claims based on the placements of Sorgi, Carey and Martino are untimely.

Even were Mr. Daniels' claim timely, Defendants have articulated legitimate, non-discriminatory reasons for their actions which Daniels has not attempted to refute in his response.  Accordingly, summary judgment is warranted with respect to Mr. Daniels' claims against both Niagara Mohawk and IBEW.

### 2.     Seals' Claim against IBEW

According to Mr. Seals, his transfer from the Construction and Maintenance Department to the Cable Construction Department from September 2003 to August 2004 was discriminatory and IBEW refused to pursue the matter, despite his repeated requests. As already noted above, Mr. Seals has made no attempt to identify the dates on which he purports to have requested assistance from his union.  Reading the Second Amended Complaint and all submissions in a light most favorable to Mr. Seals, this Court will assume that at least one such overture occurred on or after December 17, 2003.

14

IBEW attests that Niagara Mohawk transferred six employees, including Mr. Seals and Mr. Stitt, from Construction and Maintenance to the Cable Department in September 2003.  (Long Aff. ¶¶ 22-24.)  IBEW filed a grievance in connection with the transfer on September 17, 2003, stating that it was done "without a Good Faith meeting and without regards to the language in the agreement."  (*Id.* Ex. G.)  Specifically, the IBEW objected to the transfers on the ground that employees were not asked by seniority.  (*Id.*)  Mr. Seals concurred at his deposition that assignments to the Cable Department should have been made by seniority.  (Rooney Aff. Ex. J at 36:11-37:12.)  Mr. Seals, a Chief Mechanic, was senior to one employee in his classification, also African-American, who was not transferred.[6]  (Long Aff. ¶ 24; Rooney Aff. Ex. J at 37:6-12.)

IBEW processed the grievance through the Second Step.  (Long Aff. Ex. G.)  In August 2004, Niagara Mohawk reversed the transfers and all employees were returned to the Construction and Maintenance Department.  (*Id.* ¶ 26; Lynn Aff. ¶ 21.)  After IBEW determined that no employee had suffered a reduction in labor grade during the transfer period, it withdrew the grievance without prejudice in March 2006.  (Long Aff. ¶ 27.)

On the record presented, Mr. Seals has failed to state a *prima facie* case against IBEW because it is undisputed that IBEW immediately filed a grievance on behalf of Seals and all other effected employees on September 17, 2006, and that it pursued the grievance until all employees were transferred back to their original department.  In short, Mr. Seals cannot show that IBEW permitted the employer's violation of the collective bargaining agreement to go unrepaired.

---

[6] Mr. Stitt, also a Chief Mechanic, was senior to both the junior-most Chief Mechanic and Seals. (Lynn Aff. ¶ 17.)

Beyond that, Mr. Seals has not come forward with any direct or circumstantial evidence of discriminatory animus on the part of IBEW.  It is doubtful that he could do so in any event.  As the second most junior employee in his classification, Mr. Seals likely would have been transferred had the transfers been carried out by seniority.  At least in part due to the efforts of IBEW, all transfers were reversed.

Because he has failed to establish a *prima facie* case of discrimination by IBEW, summary judgment is granted as to Mr. Seals claim.  For the same reasons, had Mr. Stitt's claim against IBEW been timely, he too would have been unable to establish a *prima facie* case.

### 3.    Hayes' Claim against IBEW

The only timely claim advanced by Mr. Hayes is his allegation that, in April 2004, IBEW refused to pursue disability benefits to which he was entitled.  (Long Aff. Ex. D.)  Mr. Hayes is employed by NRG, not Niagara Mohawk.  (Lynn Aff. ¶ 5.)

While on disability leave from NRG, Mr. Hayes exhausted his disability benefits.  However, he had accrued vacation time.  Although NRG had allowed Mr. Hayes to utilize vacation time in the past to extend a disability period, it paid out Mr. Hayes' vacation in a lump sum and placed him on disability retirement.  (Long Aff. ¶ 46.)  IBEW filed a grievance protesting the company's arbitrary decision to "pay[ ] off" grievant's vacation after short term disability.  (Long Aff. Ex. L.)  IBEW filed a second grievance challenging the company's decision to place Mr. Hayes on disability pension and its failure to return him to work.  (*Id*. Ex. M.)  Mr. Hayes was returned to work on June 17, 2004.  (*Id*. ¶ 46.)  Neither of the grievances have been withdrawn and they are pending in the step and

arbitration process.  (*Id*.)

In addition to the evidence specific to Mr. Hayes' 2004 disability, IBEW has also come forward with competent evidence showing that it pursued a disability related grievance to arbitration on Mr. Hayes' behalf in 2000 (*Id*. ¶ 44, Ex. K), and filed a grievance, in March 2002, over discipline issued to Mr. Hayes which is still pending in the grievance and arbitration process (*Id*. ¶ 45).

Mr. Hayes has not come forward with any contradictory evidence and, in light of the record here, he is unable to demonstrate a *prima facie* case of discrimination by IBEW. He is unable to show that IBEW is breaching its duty of representation where it is undisputed that IBEW presently is pursuing three grievances on his behalf.  Moreover, Mr. Hayes has not attempted to demonstrate that IBEW took any action with respect to him that was based on racial animosity.

## IV.  CONCLUSION

For the foregoing reasons, Niagara Mohawk's Motion for Summary Judgment is granted, IBEW's Motion for Summary Judgment is granted, and the Second Amended Complaint is dismissed in its entirety.

## ORDERS

IT HEREBY IS ORDERED, that Defendant International Brotherhood of Electrical Workers, AFL-CIO, Local 97's Motion for Summary Judgment (Docket No. 34) is GRANTED, Defendant Niagara Mohawk Power Corporation's Motion for Summary Judgment (Docket No. 3r) is GRANTED, and the Second Amended Complaint (Docket No. 14) is dismissed in its entirety.

FURTHER, that the Clerk of the Court is directed to take the necessary steps to close this case.


SO ORDERED.

Dated:      March 24, 2007
            Buffalo, New York


                                        s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        United States District Judge